## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JASON LEOPOLD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:13-cv-1324 (JEB) |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp.") introduces a number of irrelevant factors and arguments to contend that SSCI did not intend to maintain control over the Committee-approved version of the Executive Summary of its Report on the former detention and interrogation program of the Central Intelligence Agency ("SSCI Report" or "Report").  However, when SSCI submitted the Report to a few Executive Branch agencies, including the Department of Justice, for their review before finalizing it, SSCI intended to maintain control over the Report prior to any public release, and the Department abided by the restrictions placed on its use of the Report.  Under the applicable factors, and because SSCI's intent to retain control over the Report is clear, the Report is not an "agency record" under FOIA, and defendant's motion to dismiss should be granted.

## ARGUMENT

I.   **STANDARD OF REVIEW.**

    A.   **The Court Should Decide This Issue On a Motion to Dismiss.**

Plaintiff contends in his Opposition that this motion should be decided on summary judgment, rather than as a motion to dismiss. *See* Pl.'s Opp. at 8-9. However, plaintiff does not seriously argue that the "agency record" issue is not jurisdictional, just that this question is more appropriately decided on summary judgment. Pl.'s Opp. at 8-9. But "[w]hen a court lacks subject matter jurisdiction, it must dismiss the case and not grant summary judgment." *Auster v. Ghana Airways Ltd.*, 514 F.3d 44, 48 (D.C. Cir. 2008). A motion to dismiss is thus the appropriate means by which this Court should decide this issue. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Except for cursorily stating that "the same statute provides the basis for determining both jurisdiction and the merits of the case" and the jurisdictional question and merits are thus intertwined, and that both parties are submitting information outside the pleadings, Pl.'s Opp. at 9, plaintiff does not explain why this motion "must" be converted to one for summary judgment.[1] However, it is proper for parties to submit, and a Court to consider, information outside the pleadings on a 12(b)(1) motion to dismiss.[2] *See Scolaro v. D.C. Board of Elections*

---

[1] While plaintiff complains that defendant's motion to dismiss did not contain a statement of facts as to which there exist no material dispute as required by this Court's requirements under LCvR 7(h) for summary judgment motions, there was no need to submit such a statement of facts because this is not a motion for summary judgment.

[2] Courts in this Circuit have considered motions to dismiss for lack of subject matter jurisdiction to be brought under Rule 12(b)(1) even after entry of a judgment on the merits. *See, e.g., U.S. v. Philip Morris USA, Inc.*, 787 F.Supp.2d 68, 73 (D.D.C. 2011) (treating challenge to court's

*and Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing *Herbert v. Nat'l Acad. of Sciences*, 974

F.2d 192, 197 (D.C.Cir.1992)).  And because the question of whether a document is an "agency

record" is jurisdictional, it must be decided first.  *Electronic Privacy Information Center v. Nat'l*

*Security Agency*, __ F. Supp. 2d __, 2013 WL 5701645, *4 n. 5 (D.D.C. 2013) ("Whether a

document is an "agency record" is a jurisdictional question that must be answered before

proceeding to decide a case under the FOIA on the merits.").  Plaintiff has offered no compelling

reason why this Court should not to decide on a motion to dismiss whether the SSCI Executive

Summary is an "agency record," and because, as discussed below, this Court lacks subject matter

jurisdiction over plaintiff's FOIA claim for the SSCI Executive Summary, it must be dismissed.

**B.**      **Plaintiff Misconstrues the Supreme Court Decision in *Tax Analysts v. U.S.***
            ***Dep't of Justice* and Subsequent D.C. Circuit Case Law.**

      Plaintiff contends that under *Tax Analysts v. U.S. Dep't of Justice*, 492 U.S. 136 (1989),

if the record at issue in this case "ha[s] come into the agency's possession in the legitimate

conduct of its official duties," Pl.'s Opp. at 15, then it is an agency record and defendant's

---

subject matter jurisdiction in "Suggestion of Mootness and Motion for Partial Vacatur" of award
of injunctive relief brought under Rule 12(h)(3) as challenge to subject matter jurisdiction under
Rule 12(b)(1), stating that challenge to subject matter jurisdiction under Rule 12(b)(1) "may be
raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial
and the entry of judgment.") (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006)).  To the
extent the Court may determine that this motion should have been brought either under Rule
12(h)(3) or 12(c), rather than Rule 12(b)(1) because defendant has already filed an answer to
plaintiff's complaint, Rule 12(b)(1) continues to provide the proper standard of review.  *See id.*
("When faced with what a party characterizes as a Rule 12(h)(3) motion, a court should treat the
motion as a traditional Rule 12(b)(1) motion for lack of subject matter jurisdiction.") (quoting
*Harbury v. Hayden*, 444 F.Supp.2d 19, 26 (D.D.C.2006)).  A Rule 12(c) motion to dismiss for
lack of subject matter jurisdiction should also be decided under the 12(b)(1) standard.  *See*
*Newbrough v. Piedmont Reg'l Jail Auth.*, No. 3:10CV867–HEH, 2012 WL 169988, at *2 (E.D.
Va. 19 Jan. 19, 2012) (quoting 5A Wright & A. Miller, Fed. Practice and Procedure § 1367
(1990)) ("'[I]f a party raises an issue of subject matter jurisdiction on his motion for judgment on
the pleadings, the court will treat the motion as if it had been brought under Rule l2(b)(1).'")

motion should be denied.  That argument, however, misconstrues the opinion in *Tax Analysts* and subsequent D.C. Circuit case law.

The four-factor test set forth in defendant's opening brief generally provides the standard to apply with respect to whether an agency sufficiently "controls" the requested materials.  *See* Def.'s Mem. at 4-5.  Plaintiff correctly notes that under *Tax Analysts*, the Supreme Court concluded that two requirements must be met in order for materials to qualify as "agency records."  First, the agency must have either created or obtained the requested materials.  *Tax Analysts*, 492 U.S. at 144.  Second, "the agency must be in control of the requested materials at the time the FOIA request is made."  *Id.* at 145.  While the *Tax Analysts* Court did state that, "By control we mean that the materials have come into the agency's possession in the legitimate conduct of its official duties," it had the four-factor test before it at the time in the case that was being appealed, and, in affirming the decision in that case, did not reject it.  *See Tax Analysts v. Dep't of Justice*, 845 F.2d 1060, 1069 (D.C. Cir. 1988) (*aff'd*, 492 U.S. 136 (1989)).  Subsequent D.C. Circuit cases have relied on that four-factor test as an amplification of the "control" requirement set forth in the Supreme Court decision in *Tax Analysts*.  *See, e.g., Burka v. Dep't of Health and Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996); *accord United We Stand America, Inc.,* 359 F.3d at 599.  Thus, the D.C. Circuit's use of the four-factor test is consistent with the Supreme Court decision in *Tax Analysts*; to the extent that plaintiff argues otherwise, he is wrong.  *See* Pl.'s Opp. at 15.

In a novel argument, plaintiff contends that – despite the number of D.C. Circuit cases that apply the four-part test subsequent to the Supreme Court decision in *Tax Analysts* – the D.C. Circuit's four-part test is an "intent-based control test," conflicts with *Tax Analysts*, and this Court can thus not apply it.  *Id.*  This argument is again based on a misreading of *Tax Analysts*,

and should be rejected.  Citing to dicta in *Tax Analysts*, plaintiff contends that the *Tax Analysts* Court "specifically rejected" an "intent-based control test," which would have made "the determination of 'agency records' turn on the intent of the creator of a document relied upon by an agency."  Pl.'s Opp. 11, 13.  But in making that statement, the *Tax Analysts* Court was responding to a Department argument that would have limited "agency records" "to those documents 'prepared substantially to be relied upon in agency decisionmaking.'"  *Tax Analysts*, 492 U.S. at 147-48.  It was discerning *that* intent that the Court determined to be an "elusive endeavor," and not the outward manifestations of non-agency control relied upon in the four-part test used by the D.C. Circuit.  *Id.* at 148.

Finally, plaintiff identifies an additional "wrinkle," and argues that this "wrinkle" requires that a Court "first look at whether the originating body objected to the release of the documents."  Pl.'s Opp. at 14, 15.  Because, plaintiff contends, the exhibits that plaintiff submitted in support of his motion "contain[] significant affirmative evidence that [SSCI] members are actively seeking release of the Report, or at least its Executive Summary," the Court must look solely to whether "the materials have come into the agency's possession in the legitimate conduct of its official duties."  Pl.'s Opp. at 15.  All plaintiff's "wrinkle" amounts to, however, is that where there is an outward manifestation of non-agency control, documents "probably would not be considered 'agency records.'" [3]  Pl.'s Opp. at 14 (quoting *Judicial*

---

[3] Plaintiff contends that this "wrinkle" occurs because of language in *United We Stand* that notes that "the connection between Congress and the requested records implicates considerations not at issue in" *Tax Analysts*.  Pl.'s Opp. at 14.  *Judicial Watch*, plaintiff argues, then suggests that those "considerations" pertain to whether the originating branch objected to the release of the records at issue.  *Judicial Watch*, 726 F.3d at 225.  As *Judicial Watch* makes clear, however, these "considerations" in fact pertain not to whether the records' originator objects to disclosure, but to broader concerns:  "namely, separation-of-powers concerns that would arise were we to construe FOIA to cover such documents or information."  *Id.* at 225-26.  These concerns are addressed in Section II.B.5. below.

*Watch*, 726 U.S. F.3d at 222 n. 15).  Where, on the other hand, the *Tax Analysts* courts "did not

object" to the release of their opinions, those opinions – in the possession and control of the

Department of Justice – qualified as "agency records."  *See Tax Analysts*, 492 U.S. at 143-148.

 In attempting to use the "wrinkle" for his purposes, plaintiff confuses the discussions held

by SSCI regarding the disposition of the Report with the ability of the Department of Justice to

release the document.  *See* Pl.'s Opp. at 15.  Plaintiff's assumption that SSCI's deliberations on

this point mean that members of SSCI would like the *Department of Justice* to release the Report

in the FOIA context where DOJ would be required to process it, invoke applicable FOIA

exemptions, and then litigate the propriety of any withholdings, is unsupported.  Accordingly,

even if members of SSCI have expressed an intention to release the Report, such expressions do

not equate to Congress's abdication of control over the document itself or the conditions under

which it would be released.

 As set forth in defendant's opening brief, the four factors endorsed by the D.C. Circuit

generally remain the correct test to determine whether an agency exercises sufficient control over

documents to render them "agency records."  Def.'s Mem. at 4-5.  As defendant also noted in its

brief, however, the D.C. Circuit in *Judicial Watch, Inc. v. United States Secret Service*, suggested

that "the standard, four-factor control test does not apply to documents that an agency has . . .

obtained from . . . a governmental entity not covered by FOIA: the United States Congress."

*Judicial Watch,* 726 F.3d at 221.  And although that case did not concern documents obtained by

an agency from Congress, the court nonetheless suggested that in such a case "the first two

factors of the standard test [are] effectively dispositive."  *Id.*  This language from *Judicial Watch*

remains the only limitation on the four-factor test; to the extent that plaintiff suggests otherwise,

his argument must be rejected.

II.   **THE SSCI EXECUTIVE SUMMARY IS A CONGRESSIONAL RECORD, NOT SUBJECT TO FOIA.**

    A.   **Whether the SSCI Executive Summary Is an "Agency Record" Turns on the Control SSCI Exercises Over the Summary.**

Plaintiff devotes a large portion of his argument to contending that any restrictions that SSCI placed on its Executive Summary "must . . . be understood in the context of the restraints placed on it by the CIA," Pl.'s Opp. at 19, because any restrictions placed on the SSCI Report by the CIA do not indicate a desire by SSCI to assert control. Pl.'s Opp. at 17-24; 35. This argument, however, confuses CIA control over classification of CIA information in the Report with SSCI control over the Report itself. As discussed more fully below, even though CIA may control decisions over what CIA information can be disclosed in a public version of the Report, the Report itself is a SSCI document, and SSCI controls any public dissemination of the Report once a declassification review has occurred. In other words, once a declassification review is completed, the CIA would still not be free to dispose of the Report as it sees fit; the ultimate decision about the public release of the properly redacted version of the Report would remain with SSCI alone. In any event, while not necessarily relevant in this case, the restrictions that SSCI has placed on the CIA's use of the Report and prior versions thereof are, in fact, consistent with a determination that neither the Report nor the Executive Summary is an agency record. *See ACLU v. CIA*, No. 1:13-cv-01870-JEB, Defendant's Memorandum in Support of Motion to Dismiss (Feb. 28, 2014) (Docket No. 17-1) (making clear that any controls over agency treatment of the Report were imposed by SSCI, not the CIA, and that, from the outset, SSCI considered all versions of the Report to be congressional, and not agency, records).

Furthermore, if plaintiff's argument were correct, any time DOJ received a FOIA request for a document that it did not consider to be an "agency record," but which was also in the

possession of other agencies, DOJ would be responsible for ascertaining what other agencies were in possession of that document, and how each of the other agencies was treating that document.  If DOJ determined that another agency in possession of the document exerted sufficient control over that document, DOJ would be required to consider its own copy of the record to be an "agency record" as well.  FOIA, however, imposes no such requirement, and plaintiff does not point to one.[4]  To the extent that plaintiff contends that the Report is, in fact, an "agency record" because of the CIA's treatment of it, he can make a FOIA request for the copies of the Report in possession of the CIA, which, apparently, he has already done.  *See* Pl.'s Opp. at 35.  Here, the relevant factors indicate that the Executive Summary of the SSCI Report in possession of the DOJ is not an "agency record."

> **B.  An Analysis of the Relevant Factors Indicates that SSCI Retains Control of the Executive Summary of its Report.**
>
> **1.  SSCI Intended To Retain Control Over the Report.**

In contending that SSCI does not intend to maintain control over the Executive Summary of the SSCI Report, plaintiff raises three arguments:  first, that perhaps any restrictions placed on dissemination of the Report were placed upon it not by SSCI, but by the CIA, Pl.'s Opp. at 20-23; second, that in imposing any restrictions over the Report, "SSCI was doing no more than attempting to prevent the unauthorized disclosure of highly classified information," *id.*; and third, that because SSCI did not have "authority to legally grant or restrict access to the Report by Executive Branch officials," Pl.'s Opp. at 23-24, it could not have intended to retain control

---

[4] Similarly, plaintiff in many places refers to "Executive Branch" officials rather than "DOJ" officials, as though the "Executive Branch" were one behemoth entity for FOIA purposes and as though the treatment of the SSCI Report by one Executive Branch agency could transform the Report into an "agency record" for all others.  *See, e.g.,* Pl.'s Opp. at 22, 23, 26, 28, 29, 31 ("the third and fourth factors of the four-part test should be applied to the entire Executive Branch rather than just Defendant"), 33, 34.  But, as explained above, this is not the case.

over the Report.  *Id.* Plaintiff's first argument is addressed in Section II.A. above; the second and third arguments will be addressed below.  All are without merit.

The record is devoid of evidence that the restrictions SSCI imposed on the Report were imposed for the purpose of preventing the unauthorized disclosure of classified information. Even if that were in part true, however, this does not mean that SSCI did not intend to retain control over the dissemination and disposition of the Report.  If the restrictions were imposed solely to protect the classified information, SSCI would more likely have provided copies of the Report with warnings to treat it – and the information within – commensurate with the classification level of the information.  Here, however, SSCI required submission of names of individuals to the Committee for approval before receiving a copy of the Report for review; there was no reason to do that if the only purpose for the restrictions was to prevent unauthorized disclosure of classified information.[5]

Again confusing Executive Branch legal authority to classify information with a corollary legal authority to release the Report, plaintiff next contends that SSCI did not have legal authority to grant or restrict access to its Report, and, as a result, it could not have had control over its own Report.  Plaintiff's novel "legal authority" requirement appears nowhere in the case law, nor does plaintiff explain what such "legal authority" might look like, or how it would be exercised.  Moreover, even if SSCI may not have had a legal authority to restrict access to the Report, it certainly had the authority to impose restrictions as a condition of allowing the Executive Branch to review and comment upon it.  And even if this authority was "merely

---

[5] Even if additional individuals have reviewed the Report within the CIA, as plaintiff contends, *see* Pl.'s Opp. at 25-26 (noting Senator Rockefeller's statement during hearing on nomination of John Brennan to be CIA Director that the Report should be required reading for "senior personnel"), a request by Senator Rockefeller, a SSCI member, that additional personnel review the Report is entirely consistent with an intent for SSCI to retain control over the Report.

precatory," as plaintiff argues, Pl.'s Opp. at 23, that does not mean either that SSCI did not

intend to retain control, or that its restrictions were not followed.  Conversely, if plaintiff is

correct that SSCI could only prevent a committee record that it shared with the Executive Branch

from becoming an "agency record" where it had actual "legal authority" to control access to it, it

is difficult to imagine a situation in which a transferred document would *not* become an agency

record.  Nor does plaintiff explain why an agency would not abide by any restrictions – precatory

or not – a congressional committee places on a record it created, or why such restrictions would

be inadequate to indicate an intent to retain control.

Finally, throughout his brief, plaintiff ignores an important contextual fact:  as Senator

Feinstein's letter indicates, the Committee considered the version of the Report that was

circulated to the Executive Branch to be a draft, circulating it for the specific and limited purpose

of soliciting edits and comments for SSCI to consider in making changes to the Report before

finalizing it, with SSCI remaining wholly in control of the final, and as yet undecided content of

the Report.  *See* Feinstein Letter (Ex. B to Brinkmann Decl.) ("After consideration of these

views, I intend to present this report with any accepted changes again to the Committee to

consider how to handle any public release of the report, in full or otherwise.").  Certainly, it

should not be surprising that SSCI might intend to retain control of its 6,000 page Report and the

Executive Summary until the Committee considered the Report to be final; to the extent that

comments or concerns expressed by one or more agencies might change the Report or its

conclusions, the Committee would be reluctant to allow use of the Report for other than review

and comment at the time.  Once that fact is properly taken into account, the materials submitted

by the defendant – including the Feinstein letter, the Grannis email (Ex. C to Brinkmann Decl.),

and the Brinkmann declaration, which puts these documents, and additional conversations over

them, into context within the Department – make clear that the Committee intended to maintain

control over access to the approved version of the Report, as well as its final public

dissemination, if any.

> **2.      The Department Cannot Use and Dispose of the Report as it Sees Fit, and Has Not Extensively Read or Relied Upon it.**

Plaintiff next contends that because the CIA (or the Executive Branch) has

declassification authority over the SSCI Report, the CIA and the Executive Branch must also

have the authority to disseminate the Report itself.  *See, e.g.,* Pl.'s Opp. at 25-26, 28, 30.

Relatedly, plaintiff also appears to argue that because members of SSCI have stated their desire

to see the Report publicly released, they would not object to dissemination of the Report by an

agency within the Executive Branch.  *See* Pl.'s Opp. at 24-26.  Thus, plaintiff argues, the DOJ

can use and dispose of the SSCI Report as it sees fit.  This argument, however, again confuses

the power to declassify with the power to release, and confuses the DOJ both with the CIA and

the Executive Branch as a whole.  Regardless of the issue of declassification, neither the CIA nor

the Department has authority to publicly release the SSCI Report.

As noted above, and even under the plaintiff's own argument, it is not the DOJ, but the

*CIA* that generally has declassification authority over CIA information contained in the SSCI

Report; *see* Pl.'s Opp. at 25 ("the CIA is responsible for declassifying the Report and making it

public").  Because the SSCI Report is a review of the CIA's former detention and interrogation

program, it is replete with information that originated from, and was originally classified by, the

CIA, and it is the CIA that would have to conduct the declassification review of that

information.[6]  *See* 75 FR 707 (Dec. 29, 2009) Exec. Order 13526 "Classified National Security

Information," (Dec. 29, 2009), Part 1, Section 1.1 ("Information may be originally classified

under the terms of this order . . . if . . . (1) an original classification authority is classifying the

information;" . . . . and (4) the original classification authority determines that the unauthorized

disclosure of the information reasonably could be expected to result to damage to the national

security."); Part 3, Section 3.1(b) ("Information shall be declassified or downgraded by:  (1) the

official who authorized the original classification, . . . (2) the originator's current successor in

function, if that individual has original classification authority; (3) a supervisory official of either

the originator or his or her successor in function, if the supervisory official has original

classification authority; or (4) officials delegated declassification authority in writing by the

agency head or senior agency official of the originating agency.").  To the extent that plaintiff is

contending that DOJ has authority generally to declassify the SSCI Report in its entirety, he is

incorrect.[7]

        Nor does the ability to classify and declassify information equate to an ability to

disseminate SSCI's Report; contrary to plaintiff's arguments, there is no reason to think that

SSCI would want the agency or agencies charged with conducting a declassification review of

the SSCI Report to also control the Report's public release.  Indeed, common sense (and a

---

[6] To the extent the Report contains classified information originated by Executive Branch agencies other than CIA, those agencies would also be required to conduct declassification reviews of their information.

[7] Plaintiff suggests that the Report contains information that originated with DOJ, such as information in the volume of the Report that plaintiff contends is devoted to the DOJ's role in the development of the CIA's former detention and interrogation program.  *See* Pl.'s Opp. at 33. Plaintiff's description of that volume, however, suggests that the CIA would continue to retain classification authority over the information originating from its former detention and interrogation program, even if DOJ provided legal advice about certain aspects of the program (for example, proposed CIA interrogation techniques).  Pl.'s Opp. at 2-3.

modest understanding of the relationship between Congress and the Executive Branch) would indicate otherwise. Senator Feinstein's letter speaks to that issue, stating that after considering any response from the agencies to which the Report was distributed, the Committee itself would "consider how to handle any public release of the report, in full or otherwise." Ex. B to Brinkmann Decl. While SSCI members in their various statements may not distinguish between the Executive Branch's declassification review of the Report and SSCI's public release of it, that does not change the fact that *DOJ* has no authority either to declassify the Report, or to unilaterally release any subsequently declassified portions publicly.[8]

Plaintiff also speculates that because of the nature of the Report, "the communications from the Committee could not possibly be read to mean that the Executive Branch should do nothing more than 'review' . . . and 'comment[]' . . . on the Report." Pl.'s Opp. at 29 (internal citations omitted). This speculation, however, is unsupported by the evidence. First, as noted in the Brinkmann Declaration, in February 2013, seven months prior to receipt of plaintiff's FOIA request in this case, OIP had received a FOIA request seeking a copy of the entire SSCI Report, including the executive summary sought by plaintiff. Brinkmann Decl. ¶ 5. At that time, OIP made inquiries both within the Department, including the Office of Legislative Affairs, and to other relevant federal agencies regarding the circumstances under which copies of the SSCI Report had been provided to the Executive Branch, and had learned that, in fact, the SSCI Report was provided by SSCI to the Department and other relevant Executive Branch agencies "to allow those Executive Branch entities to provide edits or comments on the Report for SSCI's

---

[8] Although plaintiff disclaims making such an argument, Pl. Opp. at 26-28, the logical conclusion of his position is that any congressional record that contains information classified by the Executive Branch automatically becomes an "agency record," by virtue of the requirement that it must undergo a declassification review prior to release. This position has no basis in law and would eviscerate the congressional oversight committees' control over their records when they examine classified activities of the Executive Branch.

consideration prior to SSCI finalizing the Report." *Id.*  This point is explicitly made in the letter

from the SSCI Chairman to DOJ, which states that the Report is being provided to certain

agencies for the purpose of obtaining "suggested edits or comments."  Ex. B to Brinkmann Decl.

Thus, there were other relevant discussions that confirmed this understanding of the SSCI

Report's dissemination.

Similarly, there is no reason except for rank speculation to doubt the statements in the

Brinkmann Declaration that the Report has been "reviewed by only a limited number of

[Department] employees."  *See* Pl.'s Opp. at 30-31.  The email from SSCI Staff Director David

Grannis expressly limits the individuals who would be authorized to review the Report to those

"identified in advance to the [SSCI] Chairman."  Ex. C to Brinkmann Decl.  Moreover, as set

forth in the Brinkmann Declaration, SSCI explicitly limited the number of individuals who

would be provided a copy of the Report for review:  "the first list of Department names was

deemed by SSCI to be too broad; a more limited list was subsequently agreed to by the

Committee, and a few additional names were later added to the list, and approved by the SSCI

Chairman."  Brinkmann Decl. ¶ 8.  Plaintiff has provided no evidence to show that the

Department did not abide by these restrictions.

As noted above, because the Committee had reserved the right to review any comments

received and revise the Report accordingly prior to any public release, circulation of the

document to a few authorized individuals solely for review and comment was a logical step.

Moreover, to the extent that SSCI did not consider its Report and the Executive Summary to be

final, it stands to reason that the Committee would be reluctant to allow use of the Report for

other than review and comment at the time, and would seek to maintain control over the Report

until it was ready to publicly release a final version.  And to the extent that SSCI did not intend

to limit the reading and reliance on the Report within the Department, there would have been no reason to require identification and authorization of each individual who would receive a copy; SSCI instead could have simply disseminated copies of the Report with no additional instruction.

>    **3.     The Department Has Not Integrated the SSCI Report Into its Record Systems to any Substantial Degree.**

Plaintiff contends that the defendant has not demonstrated that the Report was not integrated into Department record systems, arguing that it is insufficient to address only DOJ record systems, and that the Report's physical location in a SCIF sheds no light on whether it is integrated into any record systems. Plaintiff's argument, however, misses the point. With respect to plaintiff's first point, as set forth above in Section II.A., only DOJ record systems are relevant to the Court's analysis. With respect to plaintiff's second point, under the fourth prong of the test, the question is "the degree" to which the document was integrated into the agency's record system or files. *United We Stand America*, 359 F.3d at 599. Thus, some degree of integration is acceptable. The very nature of the access restrictions placed on the Report, including the limited review-and-comment purpose for the access, as well as the requirement it be stored in a SCIF would preclude any substantial integration into the Department's records and filing systems, as review of the document can only occur in the SCIF, and only by those individuals previously approved by SSCI and who possess the requisite security clearances. *See* Brinkmann Decl. ¶ 8.

>    **4.     Plaintiff's "Other Factors" Do Not Support a Finding that the SSCI Executive Summary is an "Agency Record."**

Plaintiff variously argues that the Report should be considered an "agency record" because 1) the Report was physically transferred to the Executive Branch agencies rather than requiring review at SSCI; 2) the Report is not subject to the disclosure provisions of any other

statute; and 3) the Report relates to the functioning of the Executive Branch and therefore fulfills a key purpose of FOIA.[9]  Pl.'s Opp. at 32-33.  These arguments may be quickly disposed of.

First, there is no requirement that a congressional record remain in the possession of Congress in order to avoid a finding that it is an "agency record."  Indeed, if that were the case, then *any* document transferred from Congress (or from another entity not subject to FOIA) to an agency would become an agency record, and none of the cases or foregoing discussion would be necessary.  In other words, mere possession would end the analysis; there would be no issue as to reservation of control.  Moreover, to the extent that SSCI intended for the various Executive Branch agencies to meaningfully review and comment on its 6,000 page Report, the actual transfer of the Report – rather than requiring high level agency officials to travel to SSCI workspaces and review the Report – obviously facilitated this review.  It has no bearing on an "agency record" analysis.

Second, whether the Report is subject to the disclosure provisions of any other statute is irrelevant to whether it is an "agency record" in the hands of the Department.  In *Judicial Watch*, 726 F.3d at 224, cited by plaintiff for this proposition, the D.C. Circuit concluded that constitutional separation of powers concerns provided an important reason to find that the logs of

---

[9] Plaintiff also contends that even if this Court were to determine that the SSCI Report itself is not an "agency record" for purposes of FOIA, because Senator Feinstein "has specifically called for the release of the Executive Summary of the Report," the Court should find that that at least the Executive Summary is not an agency record.  Pl.'s Opp. at 35.  First, the article to which plaintiff cites does not support this argument, stating only that Senator Feinstein "planned to ask the White House and C.I.A. to declassify its 300-page executive summary after 'making any factual changes to our report that are warranted after the C.I.A.'s response."  Ex. 7 to Pl.'s Opp.  Aside from saying nothing about public release of the Executive Summary, Senator Feinstein's statement actually supports the defendant's argument that the version of the Report that was circulated to Executive Branch agencies was not final, and that the Committee still intended to make changes to that version before submitting it for declassification review.  Second, even if Senator Feinstein had called specifically for release of the Executive Summary, it does not change the arguments against considering the Executive Summary to be an "agency record."

visitors to the Office of the President were not "agency records" within the meaning of FOIA. In finding that the visitor logs were not "agency records," the *Judicial Watch* court – in language equally applicable here – cautioned against allowing a plaintiff to use FOIA to require the disclosure of documents otherwise not subject to FOIA: "And where Congress has intentionally excluded a governmental entity from the Act, we have been unwilling to conclude that documents or information of that entity can be obtained indirectly, by filing a FOIA request with an entity that *is* covered under that statute." *Id.* at 225 (emphasis in original).

Third, whether a document "is likely to shed significant light on the decision-making functions of the Executive Branch" is simply not a consideration with respect to whether it is an "agency record" under FOIA. Certainly, many documents created by Congress in the course of its oversight of Executive Branch programs and activities would "shed significant light" on the Executive Branch; that does not mean they should be considered to be agency records and publicly disclosed under FOIA.

> **5.     Policy Considerations Unique to the Congressional Context Favor a Finding that the SSCI Executive Summary is not an "Agency Record."**

Plaintiff suggests that the court in *United We Stand Am. Inc. v. IRS*, 359 F.3d 595 (D.C. Cir. 2004), thought that the *Goland* test[10] was the more appropriate standard to apply where congressional records are at issue because of "policy considerations unique to the congressional context."[11] Pl.'s Opp. at 12. These policy considerations, however, include an important right of

---

[10] As the defendant noted in its opening brief, the *Goland* test is subsumed within the four-part test, and will not be separately addressed. Def.'s Mem. at 5 n. 1.

[11] Plaintiff also cites *United We Stand* to contend that the four-part test is *not* applicable where the request involves documents both created and possessed by the agency in the legitimate conduct of its official duties. Pl.'s Opp. at 12. Since there is no dispute that plaintiff's request

Congress "to keep its own materials confidential." *United We Stand Am. Inc.,* 359 F.3d at 599

(citing *Goland v. CIA*, 607 F.2d 339, 346 (D.C. Cir. 1978)).  This is because "Congress exercises

oversight authority over the various federal agencies, and thus has an undoubted interest in

exchanging documents with those agencies to facilitate their proper functioning in accordance

with Congress' originating intent." *Id.* Holding otherwise would force Congress "either to

surrender its constitutional prerogative of maintaining secrecy, or to suffer an impairment of its

oversight role." *Id.*  Therefore, as the *United We Stand* court noted, because "on all the facts of

the case Congress' intent to retain control over the document [wa]s clear," the D.C. Circuit held

in *Goland* that the CIA's copy of a congressional hearing transcript was a congressional

document, and not an agency record.  *United We Stand America,* 359 F.3d at 599 (quoting

*Goland*, 607 F.2d at 348).

The same unique policy considerations apply to the Executive Summary of the SSCI

Report in possession of the Department.  The Report and the Executive Summary were drafted

by a congressional committee in its oversight role, and SSCI's intent to retain control over the

Report is clear.  As in *Goland*, requiring the Department to process and release the SSCI Report

under FOIA would force Congress "either to surrender its constitutional prerogative of

maintaining secrecy, or to suffer an impairment of its oversight role."  *Goland*, 607 F.2d at 346.

Undermining these congressional prerogatives is a result not required by FOIA, where, as here,

Congress's intent to retain control of the document is clear.  Moreover, were the Court to require

that the SSCI Report be treated as an "agency record," to be processed for release of any non-

exempt information by the Department, this would likely have broad consequences beyond this

---

involves documents that were not created by the agency, this language in *United We Stand* is
inapplicable to this case.

case.  Such a requirement could impair communications between the Committee and the

Department, and it could make SSCI and other committees unwilling to again entrust copies of

their sensitive analyses to the Executive Branch for review for fear that they would be required to

be disclosed under FOIA by an Executive Branch agency.  This Court may find that the SSCI

Report is not an "agency record" for these reasons alone.

## III.  DISCOVERY IS UNNECESSARY.

Finally, plaintiff seeks discovery in this case.  However, discovery is generally not

appropriate in FOIA actions.  *Wheeler v. CIA*, 271 F. Supp. 2d 132, 139 (D.D.C. 2003)

("Discovery is generally unavailable in FOIA actions."); *Judicial Watch, Inc. v. Exp.-Imp. Bank*,

108 F. Supp. 2d 19, 25 (D.D.C. 2000) ("[D]iscovery in a FOIA action is generally

inappropriate."); *Pub. Citizen Health Research Group v. FDA*, 997 F. Supp. 56, 72 (D.D.C.

1998) ("Discovery is to be sparingly granted in FOIA actions.  Typically, it is limited to

investigating the scope of the agency search for responsive documents, the agency's indexing

procedures, and the like."), *aff'd in part, rev'd in part & remanded*, 185 F.3d 898 (D.C. Cir.

1999).  A court may deny a request for discovery made "in the bare hope of falling upon

something that might impugn the affidavits."  *Founding Church of Scientology of Washington,*

*D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 836 n. 101 (D.C. Cir. 1979).

Here, plaintiff has not raised any arguments that would overcome the presumption

against discovery in a FOIA case.  Nor has plaintiff identified any cases (FOIA or otherwise) in

which courts have countenanced discovery of another branch of government in order to

determine the "intent" of the controlling entity.  Indeed, plaintiff offers only speculation that

discovery in this case could show that the SSCI Report is, in fact, an "agency record," based

either on "a fuller understanding of the intent of the SSCI and the context in which its restrictions

were imposed," or which "include[] the restrictions imposed by the Executive Branch on the SSCI's ability to disseminate information."  Pl.'s Opp. at 33-34.  Neither of these arguments is sufficient to require discovery.  Indeed, plaintiff has offered no more than a "bare hope of falling upon something that might impugn the affidavits."  *Founding Church of Scientology,* 610 F.2d at 836 n. 101.  The intent of SSCI to maintain control over the Report is clear from the Brinkmann Declaration and the supporting documents.  And, as set forth above, any restrictions imposed by other than the Department on SSCI's ability to disseminate the Report are irrelevant.

## CONCLUSION

For the foregoing reasons, and those set forth in the Department's opening brief, the Executive Summary of the SSCI Report is not an "agency record" under FOIA, and plaintiff's claim should be dismissed.

Dated:  March 6, 2014            Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

RONALD C. MACHEN, Jr.
United States Attorney

ELIZABETH J. SHAPIRO
Deputy Branch Director
Civil Division

 */s/ Vesper Mei*
VESPER MEI (D.C. Bar 455778)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, D.C.  20530
Telephone:  (202) 514-4686
Fax:  (202) 616-8470
E-mail: vesper.mei@usdoj.gov

**Counsel for the Defendant**