UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Civil Action No. 1:13-cv-1324 (JEB) <br> ) |
| CENTRAL INTELLIGENCE AGENCY, | ) <br> ) |
| Defendant. | ) <br> ) <br> ) |

**GOVERNMENT'S REPLY IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENTAND OPPOSITION TO PLAINTIFF'S CROSS-MOTION**

As set forth in the government's opening brief, limited classified, statutorily-protected, and personally-identifiable information was redacted from the Executive Summary, under Exemptions 1, 3 and 6. Plaintiff now challenges twenty-eight specific redactions within the Executive Summary, all concerning proposed and actual expenditures of the Central Intelligence Agency ("CIA") for various intelligence purposes. Because, as set forth in the government's briefs and the Declarations of Martha Lutz,[1] notwithstanding any information that was declassified by the Executive Branch and released by the Senate Select Committee on Intelligence ("SSCI"), these redactions remain currently and properly classified and withheld

---

[1] The government believes that the Declaration of Martha Lutz filed with its Motion for Summary Judgment (ECF No. 34-1) is sufficient for the Court to evaluate the government's exemption claims. Nonetheless, now that the plaintiff has made clear precisely what he is challenging, out of an abundance of caution the CIA is, with this brief, submitting a Second Declaration of Martha Lutz to further explain the specific information challenged by plaintiff here.

1

under Exemptions 1 and 3, the CIA's motion for summary judgment should be granted, and the plaintiff's cross-motion denied.

## ARGUMENT

**I.    THE CIA'S NATIONAL SECURITY CLAIMS ARE ENTITLED TO DEFERENCE.**

Plaintiff misstates the standard of review in the national security cases.  While review is *de novo*, deference is given to the agency's determination to protect national security information.  *EPA v. Mink*, 410 U.S. 73, 84, 94 (1973).  Indeed, when the government raises national security objections to disclosure of information, the D.C. Circuit "consistently defer[s] to executive affidavits predicting harm to the national security, and ha[s] found it unwise to undertake searching judicial review."  *Ctr. For Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 927 (D.C. Cir. 2003) (citations omitted); *Larson v. Dept. of State*, 565 F.3d 857, 864 (D.C. Cir. 2009) (according substantial weight to agency's Exemption 1 affidavits).  Thus, summary judgment for the government should be granted where, as here, agency affidavits explain with "reasonable specificity" rather than through conclusory statements why the information is currently and properly classified, and where those affidavits are not called into question by contradictory evidence in the record or by evidence of agency bad faith.  *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980).

**II.   EXECUTIVE BRANCH PUBLIC INTEREST DECLASSIFICATION DETERMINATIONS ARE NOT JUDICIALLY REVIEWABLE.**

To the extent that plaintiff challenges the Executive Branch's public interest declassification determination with respect to the twenty-eight items in dispute, that procedure is not judicially reviewable.  As explained in the Second Declaration of Martha Lutz, the Director

of National Intelligence ("DNI") in consultation with the CIA and other Executive Branch agencies, conducted a declassification review of the Executive Summary, and considered certain classified information contained in the Executive Summary for public interest declassification pursuant to Section 3.1(d) of Executive Order 13,526. The public interest declassification provision recognizes that,"[i]n some exceptional cases . . . the need to protect . . . information [that continues to meet the classification requirements] may be outweighed by the public interest in disclosure of the information, and in these cases the information should be declassified." E.O. 13,526, § 3.1(d).

The twenty-eight items challenged by plaintiff are among the information that remains classified after the Executive Branch completed its public interest declassification review. The public interest declassification process allows an agency head or senior agency official to "determine, as an exercise of discretion, whether the public interest in disclosure outweighs the damage to national security that might reasonably be expected from disclosure." E.O. 13,526, § 3.1(d). This provision effectively permits the Executive Branch to declassify information in a carefully considered manner without concern that those discretionary determinations will impact the classification of similar or related information.

Plaintiff suggests that the decision to declassify seemingly similar information in the Executive Summary "severely undermine[s]" the Agency's position that the redacted expenditure information would reveal protected intelligence methods. *See* Pl's Br. at 5-6. There is nothing in the information that was subject to public interest declassification, however, that would impact or undermine the proper classification of the information plaintiff seeks. Moreover, plaintiff fails to appreciate that, under the terms of Executive Order 13,526, public

3

interest declassification determinations do not "(1) amplify or modify the substantive criteria or procedures for classification; or (2) create any substantive or procedural rights subject to judicial review." E.O. 13,526, § 3.1(d). *See Kelly v. CIA*, 2002 WL 34463900, *7 (D.D.C. Aug. 8, 2002) (noting that identical language in Executive Order 12,958, which was superseded by Executive Order 13,526, provided that public interest declassification decision was made by agency head or senior agency official, not the courts, and that section of the Order was not subject to judicial review). Accordingly, plaintiff is not entitled to judicial review on this point. To the extent plaintiff contends that the redacted information fails to meet the classification standards for withholding under Exemption 1, that argument is amply refuted below.

## II. THE EXPENDITURE ITEMS CHALLENGED BY PLAINTIFF REMAIN PROPERLY REDACTED PURSUANT TO EXEMPTIONS 1 AND 3.

Plaintiff contends that the CIA has utilized a "categorical approach" to its challenged redactions, and that this approach is improper. Pl.'s Br. at 4-5; *Coleman v. FBI*, 972 F. Supp. 5, 7 (D.D.C. 1997) (finding that a "categorical approach" is insufficient to the extent that it "does not provide [the plaintiff] with enough information to adequately challenge the [defendant's] FOIA exemption claims"). However, the Agency's descriptions for the limited redactions to the Executive Summary are not categorical, but rather are both specific enough and sufficient to describe the information withheld and the reasons for withholding those details – as evidenced by the fact that the plaintiff can precisely describe what he is challenging. Such a showing is all that is required in national security cases. *See Halperin,* 629 F.2d at 148; *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007) (holding that where an agency "identif[ies] the exemptions claimed for each individual document," and "convey[s] enough information for [a plaintiff] and the court to identify the records referenced and understand the basic reasoning behind the

4

claimed exemptions," the description is sufficient). Indeed, the detailed declarations submitted in this case resemble those approved by the D.C. Circuit in *Morley*, 508 F.3d at 1123 (concluding that summary judgment was appropriate on adequacy of *Vaughn* index where "the descriptions of the documents . . . while categorical and with little variation from page to page, convey enough information for Morley and the court to identify the records referenced and understand the basic reasoning behind the claimed exemptions"). Here, because the descriptions of the information redacted from the Executive Summary convey enough information for the plaintiff and the Court to identify the records referenced and to understand the basic reasoning behind the claimed exemptions, the Lutz Declarations – and the CIA's justification of the withholdings –are adequate.[2]

Despite plaintiff's assertions to the contrary, the CIA has demonstrated that the redacted information challenged by plaintiff satisfies the procedural and substantive requirements of Executive Order 13,526, which governs classification. Plaintiff appears to be operating under the belief that the CIA is claiming that the redacted material only qualifies as an "intelligence method" under 1.4 (c) of the Executive Order and questions how revelation of the challenged information qualify as "intelligence methods." Pl.'s Br. at 6-7. However, as set forth in the Lutz Declarations, the challenged information falls within sections 1.4(c) and (d), two recognized classification categories set forth in the Executive Order. Lutz Decl. ¶¶ 13, 17; Second Lutz Decl. ¶ 4.

---

[2] Although plaintiff does not challenge the CIA's articulation of the damage to national security that would result from the disclosure of the information, the Agency has also demonstrated how the release of the information could reasonably be expected to cause those harms. Lutz Decl. ¶¶ 26-37; Second Lutz Decl. ¶ 5. The statements of harm are logical and plausible, not categorical as alleged by plaintiff, and are discussed in the next section.

Namely, the challenged information, which indicates specific payments and costs and shows estimated or actual amounts expended for certain intelligence activities, pertains to "intelligence activities (including covert action), intelligence sources and methods, or cryptology" as well as to "foreign relations or foreign activities of the United States, including confidential sources." §§ 1.4(c), (d); Second Lutz Decl. ¶ 4. The redacted information shows payments provided to certain individuals and countries, requests for certain funds, costs associated with constructing specific facilities, and an amount reflecting a proposed decrease in the level of funding for a specific CIA component. This information not only shows the expenditures for a particular intelligence activity, but more broadly reveals the resources available to the Agency for counterterrorism operations, and constitutes intelligence methods and activities protected by Executive Order 13,526. *Id.*; E.O. 13,526 § 1.4(c). In addition, as the Second Lutz Declaration explains, the redactions challenged by plaintiff – which include payments provided to foreign governments and foreign nationals, the amount of money expended to construct facilities abroad, and amounts reflecting the resources devoted to the former detention and interrogation program that took place overseas – also pertain to foreign relations and activities of the United States. Second Lutz Decl. ¶ 4; E.O. 13,526 § 1.4(d).

Plaintiff would have this Court substitute his predictive judgment for that of the CIA. However, as noted above, courts have long deferred to agencies' assessments of matters affecting national security. *See Halperin*, 629 F.2d at 148. ("Judges . . . lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case."). Plaintiff argues "[i]t is not logical or plausible that each of the expenditure amounts withheld would reveal resources available to the Intelligence Community or intelligence priorities of the

6

U.S. Government" and attempts to distinguish two cases in which courts have upheld the withholding of CIA intelligence expenditures – *Aftergood v. CIA* and *Halperin v. CIA* – from the instant case. However, those cases support, rather than detract from, the CIA's position that specific proposed and actual intelligence expenditures are properly classified.

In *Aftergood*, the court discounted the plaintiff's argument that the Agency's aggregate budget "[did] not constitute a source or method of intelligence entitled to protection under Exemption 3." *Aftergood*, 355 F. Supp. 2d 557, 563 (D.D.C. 2005). In that case, the court held that CIA budget information "'relate[d] to intelligence methods, namely the allocation, transfer and funding of intelligence programs.'" *Id*. at 562. Furthermore, the court rejected plaintiff's assessment of harm and found that, under the National Security Act, the Director of the CIA "may withhold even 'superficially innocuous information' . . . because 'what may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context.'" *Id*. at 563 (quoting *CIA v. Sims*, 471 U.S. 159, 178 (1985) (internal quotation omitted)). The *Aftergood* court observed that "[t]he fact that the plaintiff subjectively believes that releasing the requested budget information would not compromise sources and methods of intelligence is of no moment [because] [t]he DCI is statutorily entrusted with making that decision, not the plaintiff.'" *Id*.

In *Halperin v. CIA*, also cited by plaintiff, the D.C. Circuit found that the legal fees paid to outside counsel retained in connection with covert or classified activities were properly withheld as intelligence methods protected by the National Security Act. In that case, the Agency represented that disclosure of "such information could give leads to information about covert activities that constitute intelligence methods." *Halperin*, 629 F.2d at 150. The D.C.

7

Circuit found that "the Agency's statements offer plausible detail for a court to accord substantial weight to the statements and accept the Agency's expert judgment on the potential effects of disclosing legal fees." *Id.* In a similar case, *Military Audit Project v. Casey*, the D.C. Circuit affirmed the district court's grant of summary judgment with respect to government's assertion of Exemption 1 to withhold the dollar amounts or derivative data (hours or rates) which could reveal dollar amounts spent in connection with the Glomar Explorer Project – a CIA operation about which some information was declassified. *Military Audit Project*, 656 F.2d 724, 749-50 (D.C. Cir. 1981). Over plaintiff's objections that revelation of the costs "would add nothing new to anyone's ability to discern what is the state of the art and level of sophistication of the United States' intelligence capabilities" in the project, the D.C. Circuit found that "neither we nor the appellants can be sure we know what intelligence capabilities and purposes were embodied in the Glomar Explorer." *Id.* at 750. Likewise, in *Rosenberg v. United States Dept. of Defense*, --- F. Supp. 3d ---, 2014 WL 4467272, *1, *4 (D.D.C. Sept. 11, 2014), the court held that a document pertaining to the cost of building and maintaining a detention facility at the U.S. Navy Base at Guantanamo Bay, Cuba, was properly classified under Exemption 1 because it would have disclosed intelligence activities, sources, or methods.

The twenty-eight redactions challenged by plaintiff in the instant case are no different than the expenditures at issue in *Aftergood, Halperin, Military Audit Project*, and *Rosenberg*. These cases demonstrate that courts have found intelligence expenditures, both aggregated and itemized, to qualify as "intelligence sources" entitled to protection under the National Security Act and Exemption 1. Here, the declarations describe with reasonable specificity why the information qualifies for protection under the National Security Act and, additionally, how it

8

meets the procedural and substantive grounds for classification required by Exemption 1. Notwithstanding plaintiff's speculation as to what the redacted amounts do and do not reflect,[3] Ms. Lutz has explained that release of the challenged information could be expected to harm current and future operations of the Agency, in that information about current funding levels, intelligence priorities, and resources can be extrapolated from the redacted amounts. Second Lutz Decl. ¶ 5. Additionally, even revelation of past spending could lead to comparison of different payments by different foreign partners, which could damage the relationships between the U.S. and foreign governments, and could potentially allow for the identification of foreign countries that provided assistance to the CIA – information that remains classified even in the released Executive Summary. Id. Revelation of such spending would also allow countries and individuals to use these monetary figures as a starting point for negotiations on other matters. *Id.*

Thus, courts have consistently recognized the importance of protecting the types of intelligence expenditures that plaintiff challenges here. *See Military Audit Project*, 656 F.2d at 749-50; *Halperin,* 629 F.2d at 150; *Aftergood*, 355 F. Supp. 2d at 562-63; *Rosenberg*, 2014 WL 4467272 at *4. And for all of the foregoing reasons, the information challenged by plaintiff is properly withheld pursuant to Exemptions 1 and 3.

---

[3] To this end, plaintiff contends that because the aggregate amount of funds appropriated by Congress for the National Intelligence Program is statutorily required to be made public not later than 30 days after the end of each fiscal year, these individual amounts should be disclosed as well. Pl's. Br. at 8. But the aggregate amount of funding for the National Intelligence Program is obviously different both from the CIA's aggregate budget, as well as from the individual amounts sought here by plaintiff, and Ms. Lutz explains the harm that would result from disclosure of these individual amounts. Second Lutz Decl. ¶ 5.

## **CONCLUSION**

For the foregoing reasons, as well as those set forth in the government's opening brief, the Court should grant the government's motion for summary judgment and deny plaintiff's cross-motion.

Dated: March 4, 2015

        Respectfully submitted,

        BENJAMIN C. MIZER
        Acting Assistant Attorney General

        RONALD C. MACHEN, JR.
        United States Attorney

        ELIZABETH J. SHAPIRO
        Deputy Branch Director
        Civil Division

        */s/ Vesper Mei*
        VESPER MEI (D.C. Bar 455778)
        Senior Counsel
        United States Department of Justice
        Civil Division, Federal Programs Branch
        20 Massachusetts Ave, NW
        Washington, D.C. 20530
        Telephone: (202) 514-4686
        Fax: (202) 616-8470
        E-mail: vesper.mei@usdoj.gov

        ***Counsel for the Government***